UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FLORIDA NATIONAL UNIVERSITY, INC.,

    Plaintiff,

v.

JOAO OSORIO,

    Defendant.

Case No: 1:23-cv-22537-KMW

**Injunctive Relief Requested**

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
SUPPORTING MEMORANDUM OF LAW**

Plaintiff, Florida National University, Inc. ("FNU"), moves under Federal Rule of Civil Procedure 65 for entry of a preliminary injunction against Defendant, Joao Osorio ("Osorio"), to enjoin Osorio from further violating FNU's trademarks and capitalizing on FNU's goodwill and reputation.

**INTRODUCTION**

Since at least March of 2022, Osorio has repeatedly used FNU's protected name, logo, and related marks (the "FNU Marks") without authorization in connection with his various business ventures. Osorio has falsely claimed that flight schools operated by him enjoy a "partnership" with FNU, where no such partnership exists – even going so far as to send "official" correspondence on FNU letterhead, without any authorization or approval by FNU. FNU previously demanded that Osorio cease this deceptive and misleading conduct, but Osorio has persisted. His new flight school venture continues to falsely advertise that FNU is its "partner university" without any authorization or approval by FNU. FNU has also learned that Osorio falsely directed FNU students to pay funds owed to FNU directly to

Osorio's flight school. No such arrangement was ever agreed to or authorized by FNU. Osorio's unauthorized use of FNU's marks and his false and misleading representations of a "partnership" with FNU where none exists constitutes unfair competition and is plainly calculated to draw on FNU's considerable goodwill and reputation and lend a false air of legitimacy to Osorio's dubious business ventures. This conduct is highly likely to cause confusion in the marketplace by suggesting an association with FNU where none exists, because that is exactly what it is intended to do. Osorio must therefore be preliminarily enjoined by this Court from continuing to make representations falsely suggesting an association with FNU, infringing FNU's trademarks, and damaging FNU's hard-earned reputation and goodwill.

## SUPPORTING FACTS

1. FNU is a higher education institution founded in 1982 and headquartered in Hialeah, Florida. It is an accredited university, offering both undergraduate and graduate programs, and maintains three campuses within Miami-Dade County. As of fall 2021, FNU had a total enrollment of over 3,500 students.

2. FNU's athletic teams, the Conquistadors, compete in 13 intercollegiate varsity sports within the National Association of Intercollegiate Athletics and the United States Collegiate Athletic Association.

3. FNU's stated mission is to provide its student body with an education that will lead directly to gainful employment or advanced studies. For over 35 years, FNU has grown with the needs of the diverse community it serves, and has continued to expand its educational services to support a modern workforce, offering certificate-level to Master's-level programs in a wide variety of fields, including business, technology, and health

sciences.

4.     FNU has achieved numerous accreditations and accolades during its more than three-decade history serving the community, including the following:

(a) FNU is licensed by the Commission for Independent Education, Florida Department of Education;

(b) FNU is accredited by the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC) to award diploma, certificate, associate, baccalaureate, and masters' degrees;

(c) FNU's Respiratory Therapy program (Associate of Science Degree) is accredited by the Commission on Accreditation for Respiratory Care (CoARC);

(d) FNU's Physical Therapist Assistant Program is accredited by the Commission on Accreditation in Physical Therapy Education (CAPTE);

(e) FNU's Associate of Science in Radiologic Technology and Diagnostic Medical Sonographer Technology (Medical Ultrasound) programs are Educational Programs recognized by the American Registry of Radiologic Technologists;

(f) FNU's Nursing Division has three licenses from The Florida Board of Nursing, its Associate of Science in Nursing program at the Training Center campus is accredited by the Accreditation Commission for Education in Nursing (ACEN), and the baccalaureate, master, and post-graduate degree programs are accredited by the Commission on Collegiate Nursing Education (CCNE);

(g) FNU has been approved to participate in the National Council for State Authorization Reciprocity Agreements (NC-SARA);

(h) FNU is approved for Veterans Training by the State of Florida, Department of Veterans Affairs, and as a result, is authorized to receive veterans educational benefit funds;

(i) FNU is an authorized participant of the Department of Defense Instruction (DoDI) 1322.25, Change 3 (Voluntary Education Partnership), effective July 7, 2014, and as a result, is authorized to receive military tuition assistance (TA) funds;

(j) FNU has met the standards of the National Accreditation & Equivalency Council of the Bahamas Act, and as a result its programs offered online, blended, hybrid, or ground-based to the people of the Bahamas will be recognized in the Bahamas;

(k) FNU is listed in the Classification of Colleges and Universities of the Carnegie Foundation; and

 (l) FNU offers intercollegiate athletics programs as a member of the United States Collegiate Athletic Association (USCAA), the National Association of Intercollegiate Athletics (NAIA), and the NAIA's Continental Athletic Conference (CAC) and has been named a Champions of Character "Five-Star Institution" by the NAIA.

5. FNU is dedicated to serving the community which it calls home and is a regular contributor to Camillus House (a non-profit organization that provides humanitarian services to the poor and homeless), His House Children's Home (a faith-based social services agency that provides residential care, foster and adoption services for abused, neglected and drug-exposed children of South Florida from newborn to 17 years of age, transitioning youth and their families), Becca's Closet, Sommerville Housing Community, Voices for Children Foundation, and many others.

6. FNU has used and promoted the "Florida National" brand name for over 30 years and considers the excellence that name represents to be one of its most important assets. Beginning in 1989, FNU operated as Florida National College and, in 2012, FNU changed its name to Florida National University to reflect its new progression to a level III SACSCOC accreditation to offer more advanced degrees.

7. FNU has ownership rights to its name, logo and related marks (the "FNU Marks") by virtue of its consistent and well-established promotion and prior use of the FNU Marks in commerce for decades. The FNU Marks are identifiable by the public in connection with FNU's provision of reputable higher education programs and services.

11. FNU is the sole and exclusive owner of the FNU Marks and all of the associated goodwill.

12. The FNU Marks are symbolic of the goodwill and consumer recognition built up by FNU through substantial amounts of time and effort in advertising and promotion.

13. Since the FNU Marks were first used in commerce and without interruption,

FNU has expended considerable resources of both time and money to promote the FNU Marks in association with its higher education programs and services.

14. FNU is relied upon by consumers as a reputable, accredited provider of higher education programs and services in the community it has served for many years.

15. FNU maintains and operates a website advertising its educational programs and services at www.fnu.edu.

16. FNU has worked diligently to cultivate and preserve its reputation as a respected provider of higher education programs and services with an understanding that confidence in these standards under the FNU Marks is essential in continuing and promoting its services. As a result, the FNU Marks are well known and respected in the higher education community, both in Florida and across the United States.

17. Since at least March of 2022, Osorio has incorrectly and misleadingly advertised a "partnership" with FNU on numerous occasions in a deceptive attempt to draw on FNU's considerable goodwill and lend an air of legitimacy to his various business ventures.

18. In March of 2022, FNU learned of a letter sent by Osorio to the Consular Chief of the United States Embassy which falsely claimed an "official partnership" between GPS Global Pilot School (a flight training school operated by Osorio) and FNU.

19. The letter, titled "Official Partnership Letter," was styled on FNU letterhead and stated: "This is an official Letter stating Florida National University has an official partnership with GPS Global Pilot School to provide flight time building hours while our students attend our full time English as a Second Language (ESL) program." A copy of the letter is attached hereto as **Exhibit A**.

20. The letter was drafted and sent by Osorio without FNU's knowledge and without any authorization or approval by FNU. Osorio was not authorized to use FNU's letterhead, which featured FNU's Marks. Nor was Osorio authorized to claim a "partnership" between his flight school and FNU.

21. As FNU made clear in its August 29, 2022 Cease and Desist letter to Osorio, there is not, nor has there ever been, any partnership between FNU and Osorio or his flight school.

22. Undaunted by FNU's demand that he cease this deceptive conduct, Osorio has continued to falsely represent non-existent "partnerships" with FNU.

23. Osorio now operates a new flight school called "International Pilot School," and has undertaken an advertising campaign, including internet marketing, which once again improperly suggests an association and/or partnership between Osorio's new flight school and FNU where no such association or partnership exists.

24. As of the date of filing of this Motion, the website for Osorio's new flight school advertises an "International Pilot Course" and states that prospective international students "can apply for a student visa with our partner university FNU (Florida National University South Campus)." A recent date-stamped screenshot of the webpage is attached hereto as **Exhibit B**.

25. Osorio's flight school is not associated or connected with FNU, and the use of the FNU's Marks by Osorio in connection with this false assertion is neither licensed, authorized, sponsored, endorsed, or approved by FNU.

26. Incredibly, Osorio has also directed FNU students to pay to Osorio's flight school fees the students owed to FNU.

27. FNU did not authorize or agree to any arrangement whereby Osorio could collect fees and/or debts to FNU owed by FNU students. Osorio simply and brazenly defrauded FNU students using the ruse of his non-existent partnership with FNU.

28. FNU did not authorize Osorio's use of the FNU Marks to obtain funds from FNU students under false pretenses.

## ARGUMENT

FNU is entitled to a preliminary injunction because (A) it is substantially likely to succeed on the merits of its claims; (B) it is suffering irreparable injury; (C) the balance of harms decidedly favors FNU; and (D) the public interest favors enjoining Osorio. *See, e.g.*, *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

A. **FNU has a Substantial Likelihood of Prevailing on the Merits of its Claims.**

FNU has a substantial likelihood of prevailing on its claims against Defendant for: (1) unfair competition, false association, false designation of origin, and infringement of a trademark under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (2) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

1. **FNU's Claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).**

Section 43(a) of the Lanham Act (15 U.S.C. section 1125(a)) forbids trademark infringement, false designation of origin, and unfair competition, and protects both registered and unregistered marks. *Knights Armament Co. v. Optical Systems Technology, Inc.*, 568 F.Supp.2d 1369, 1375 (M.D. Fla. 2008) (citing *Planetary Motion, Inc. v. Techsplosion*, 261 F.3d 1188, 1193 (11th Cir. 2001)). To prevail under Section 43(a), a party must show (1) that it had prior rights to its mark or name and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely

to confuse the two. *Lone Star Steakhouse & Saloon v. Longhorn Steaks*, 106 F.3d 355, 360 (11th Cir. 1997). Here, there is no question that Osorio used FNU's name and the FNU Marks without authorization and falsely represented and advertised the existence of partnership with FNU so as to create confusion among consumers.

   i. *FNU has prior rights to the FNU Marks.*

Even if a mark is not federally registered, the use of another's unregistered, i.e., common law, trademark can constitute a violation of section 43(a) of the Lanham Act. *Crystal Entertainment & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1320 (11th Cir. 2011). To acquire common-law rights to a trademark, a party must have demonstrated prior use of the mark in commerce. *Commodores Entertainment Corporation v. McClary*, 879 F.3d 1114, 1131 (11th Cir. 2018). Prior use, in turn, is established with evidence showing adoption and use in a way sufficiently public to identify or distinguish the marked goods or services in an appropriate segment of the public mind as those of the adopter of the mark. *Id.*

Here, FNU has used the FNU Marks in commerce for decades. FNU has used and promoted the "Florida National" brand name for over 30 years. Beginning in 1989, FNU operated as Florida National College and, in 2012, FNU changed its name to Florida National University to reflect its new accreditation to offer more advanced degrees. Since that time, FNU has continuously operated as a fully-accredited higher education institution offering certificate-level to master's-level programs in a variety of fields, including business, technology, and health sciences. FNU has grown over time with the community it serves, and currently maintains three campuses in Miami-Dade County. In FNU's over 30 years in operation, it has been recognized with numerous accreditations and accolades, and has contributed significantly to local community service organizations. Throughout this time,

FNU has also expended considerable resources of both time and money to promote the FNU Marks in association with its educational services, including by maintaining and operating a website advertising its educational programs and services at www.fnu.edu.

By virtue of this consistent and well-established prior use and promotion, the FNU Marks have become readily identifiable by the public, both in Florida and across the United States, in connection with FNU's provision of reputable higher education programs and services. FNU has thus acquired protectable, common-law rights to the FNU Marks.

      ii.    *A likelihood of confusion exists given the similarities between the respective marks.*

In determining whether a likelihood of confusion exists, courts consider the following factors: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion. *Commodores Ent. Corp. v. McClary*, 648 F. App'x 771, 776 (11th Cir. 2016). A plaintiff need not prevail on all seven factors to succeed in its trademark infringement claim. Rather, courts look to the overall balance of the factors to see if a reasonable consumer would be confused by the infringing mark. *Id.* at 1341–42; *It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1331 (S.D. Fla. 2013).

Here, the overall balance of the relevant factors establishes a strong likelihood of customer confusion and weighs decisively in favor of an injunction. With regard to the second factor, Osorio used marks that were *identical* to FNU's marks and used those marks to advertise his own flight school services. Indeed, he used the name "Florida National

University," as well as FNU's logo and letterhead, in order to falsely represent an "official partnership" with FNU.

The third, fourth and fifth factors also weigh in favor of an injunction. Osorio used the FNU Marks in connection with a similar service – his flight school – in order to capitalize on FNU's reputation and goodwill in the area of educational services. FNU and Osorio both advertise education and workforce training-related services through their respective websites. And both target a similar customer base – prospective students seeking educational services in the Miami-Dade County area. Given Osorio's use of the identical FNU Marks and his affirmative representation of an "official partnership" with FNU, these similarities increase the risk of confusion. It is highly likely that a consumer would be confused into believing that Osorio's flight school was associated with FNU – a well-established, accredited university – and consequently draw a false connection between FNU's educational services and the services advertised by Osorio.

The sixth factor – Osorio's intent in using the FNU Marks – is also satisfied. FNU is well-known and well-respected in the community and has been in continuous operation for decades. Osorio's use of FNU's Marks and his affirmative representations of a non-existent "partnership" with FNU were not accidental. Rather, it is clear that Osorio deliberately used the FNU name and Marks in an effort to capitalize off of FNU's goodwill and reputation. *See It's A 10, Inc.*, 932 F. Supp. 2d at 1332 (holding the sixth factor is satisfied where the marks are so similar that it can be inferred that the defendant deliberately copied the plaintiff's mark). FNU in fact previously demanded that Osorio stop using the FNU Marks and stop falsely representing and advertising a "partnership" with FNU. Nevertheless, Osorio has continued to deliberately use FNU's Marks and represent a "partnership" with FNU without

10

any authorization or agreement from FNU. Therefore, the sixth factor is satisfied.

The seventh factor – actual confusion – also weighs in favor of an injunction. FNU has received reports that Osorio directed FNU students to pay debts owed to FNU directly to his flight school. No such arrangement was ever authorized or agreed to by FNU. These reports evince actual confusion of students with regard to the existence and nature of a connection between Osorio's flight school and FNU.

In sum, Osorio's brazen use of FNU's identical Mark and his false representation of a "partnership" with FNU in connection with his flight school businesses establish a clear likelihood of consumer confusion. Given the likelihood of consumer confusion, this Court should find that FNU has established a likelihood of success on the merits of its trademark infringement, false designation of origin, and unfair competition claim under the Lanham Act.

**2. FNU's claim under FDUTPA.**

For the very same reasons expressed above, FNU has a substantial likelihood of prevailing on the merits of its claim that Osorio has violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The central aim of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts of practices, in the conduct of any trade or commerce." *Delgado v. J.W. Courtesy Pontiac GMC-Trucks, Inc.*, 693 So. 2d 602, 606 (Fla. 2d DCA 1997). "A deceptive practice is one that is 'likely to mislead' consumers." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000).

Federal courts in this Circuit have held that "engaging in trademark infringement is an unfair and deceptive trade practice that violates" the FDUTPA. *See TracFone Wireless,*

*Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365 (S.D. Fla. 2009); *Slep-Tone Entertainment Corp. v. Two Joes, Inc.*, 2012 WL 1155534, at *2 (M.D. Fla. April 5, 2012). Because FNU has established that it has a likelihood of success on the merits of its trademark infringement, false designation of origin, and unfair competition claim, it has therefore equally established the likelihood of success on the merits of its FDUTPA claim.

**B.     FNU Has No Adequate Remedy at Law and Will Suffer Irreparable Harm Absent a Preliminary Injunction.**

Trademark infringement and unfair competition, by their very nature, cause irreparable harm. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995). In situations like the present, where FNU has made a sufficient showing of success on the merits of its trademark infringement and unfair competition claims under the Lanham Act, irreparable harm is presumed and an injunction is proper. *See, e.g.*, *E. Remy Martin & Co.,* 756 F.2d at 1530 ("[A] sufficiently strong showing of likelihood of confusion may by itself constitute a showing . . . a substantial threat of irreparable harm.").[1]

A party need not show actual damage to its reputation because it "is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. Appx. 180, 191 (11th Cir. 2005). By using the FNU Marks, Osorio has usurped control of FNU's valuable trademarks and is thus causing irreparable harm to FNU's good will and reputation. That reputational harm is almost impossible to quantify and to remedy absent injunctive relief.

Finally, injunctive relief is an appropriate remedy for a FDUTPA violation. §

---

[1] *See Montana Prof'l Sports, LLC v. Leisure Sports Mgmt., Inc.*, 422 F. Supp. 2d 1271, 1281 (MD. Fla. 2006) ("Once a plaintiff in a trademark infringement case establishes a likelihood of confusion, irreparable harm is presumed."); *Rubber Specialty, Inc. v. Sneaker Circus, Inc.*, 195 USPQ 798, 802 (S.D. Fla. 1977) ("Courts of this circuit subscribe to the rule that the infringement of a trademark is, by its very nature, an activity which causes irreparable harm.").

501.211(1) ("Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to…enjoin a person who has violated, is violating, or is otherwise likely to violate this part."). While there is certainly an ascertainable monetary component to FNU's damages, there is an even more significant harm to FNU's reputation in the marketplace based on Osorio's deceptive and unfair trade practices. Accordingly, this factor weighs heavily in favor of injunctive relief. *See Sensormatic Electronics Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1193 (S.D. Fla. 2008) *aff'd in part sub nom. Sensormatic Electronics, LLC v. Kahle*, 367 F. App'x 143 (Fed. Cir. 2010) (a preliminary injunction is an appropriate remedy for violating FDUTPA).

**C. Osorio Will Not Be Harmed by a Preliminary Injunction.**

The balance of hardships tips decisively in FNU's favor. Osorio will suffer no legitimate harm from being enjoined from continuing to use the FNU Marks and advertise a "partnership" with FNU, since Osorio is not entitled to use these marks or advertise any such partnership to begin with. *See Clayton v. Howard Johnson Franchise Systems*, *Inc.*, 730 F. Supp. 1553, 1561-62 (M.D. Fla. 1988) ("In contrast, [Defendant] would suffer no legitimate harm since the preliminary injunction would only prevent them from using marks which they are not entitled to use."). Indeed, issuing the injunction will harm Osorio "only to the extent that [it] cannot sell illegally infringing [products]" or take unlawful advantage of FNU's hard-earned reputation and goodwill. *See, e.g. Foxworthy v. Custom Tees, Inc*., 879 F. Supp. 1200, 1219 (N.D. Ga. 1995).

FNU, however, is suffering the corrosive and irreparable harm of losing control of its reputation and goodwill. The longer Osorio continues to falsely suggest an association with FNU and profit from that false association, the more irreparable harm FNU will suffer. Any

legitimate monetary damage that Osorio may suffer cannot be balanced against this very serious and ongoing harm to FNU. Consequently, the balance of harm tips in favor of FNU and its request for injunctive relief.

**D.     The Public Interest Requires Injunctive Relief.**

Courts in this Circuit recognize a strong public interest in protecting the right of the public not to be deceived. *Ferrellgas Partners,* 143 Fed. Appx. at 191 ("[T]he public interest will be served by the injunction by avoiding confusion in the marketplace."). The Eleventh Circuit has observed that the public interest in preventing confusion around the marketplace is paramount. *Sun America Corp. v. Sun Life Assurance Co. of Canada*, 11 F.3d 1325, 1336 (11th Cir. 1996). Similarly, "when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation." *Sundor Brands, Inc. v. Borden, Inc.*, 653 F. Supp. 86, 93 (M.D. Fla. 1986) (citing *James Burroughs, Ltd. V. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)). The public interest would be served, not harmed, by issuance of a preliminary injunction.

**E.     FNU Should Not Be Required to Post a Bond.**

Federal Rule of Civil Procedure 65(c) conditions the issuance of a preliminary injunction on "the movant giv[ing] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." However, "the amount of security required by the rule is a matter within the discretion of the trial court" and "the court may elect to require no security at all." *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005). Here, Osorio's conduct is clearly wrongful and FNU has established, even at this early stage,

a very strong case. On the other hand, FNU cannot identify any legitimate harm that Osorio would suffer if he is enjoined. This Court should therefore not require FNU to post a bond.

## CONCLUSION

FNU has established the required elements for obtaining a preliminary injunction. There can be no doubt that Osorio is attempting to mislead consumers into purchasing his services based on the mistaken belief that they are associated with, or originate from, FNU. Simply put, Osorio is attempting to cash in on FNU's considerable reputation and goodwill through improper means. This conduct harms not only FNU, but the public at large, who have a right not to be misled by Osorio's conduct. Accordingly, FNU respectfully requests that this Court enter a preliminary injunction on the grounds set forth below, and grant such further relief as this Court deems just and appropriate.

## CONDUCT SOUGHT TO BE ENJOINED

FNU requests that the Court issue a preliminary injunction as follows: that Osorio, and all persons and organizations in active concert, participation or combination with him be enjoined from and/or ordered to:

1. Stop advertising, marketing, selling, or offering for sale any good or service using the FNU Marks;

2. Stop advertising, marketing, or representing the existence of a partnership or any other association with FNU;

3. Take all steps necessary to remove the FNU Marks from any advertisements, internet listings and/or advertisements, or any other materials printed or to be printed or distributed (including internet distribution); and

4. Hold in a constructive trust all proceeds from the sale of any product or service sold in conjunction with FNU's Marks.

Date: July 24, 2023

/s/ David L. Luikart
David L. Luikart III
Florida Bar No. 21079
dave.luikart@hwhlaw.com
michelle.armstrong@hwhlaw.com
Jacob Z. Coates
Florida Bar No. 1011769
jacob.coates@hwhlaw.com
billie.wallis@hwhlaw.com
HILL, WARD & HENDERSON, P.A
Post Office Box 2231
Tampa, Florida 33601-2231
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I CERTIFY that on July _____, 2023, a true and correct copy of the foregoing was furnished to a process server for service upon the Defendant.

/s/ David L. Luikart
Attorney

## DECLARATION PURSUANT TO 28 U.S.C. §1746

My name is Frank Andreu and I am Interim President and CEO of Florida National University, Inc. I am authorized to make this declaration on behalf of Florida National University, Inc. I have read the factual allegations contained in paragraphs 1 through 28 of the Supporting Facts above, and I have personal knowledge thereof. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that, to the best of my knowledge, information and belief, the information contained in paragraphs 1 through 28 of the Supporting Facts above is true and correct.

Executed on July 10, 2023.

Frank Andreu